Harvey SIEGEL and Elaine Siegel, husband and wife, et al., Plaintiffs,

v.

CHICKEN DELIGHT, INC., et al., Defendants,

Vance E. SHEPHERD and Ben Zachary, a partnership, et al., Intervening Plaintiffs.

CHICKEN DELIGHT, INC., et al., Cross-Claimants,

v.

Harvey SIEGEL et al., Cross-Defendants.

Civ. No. 46271–GBH.

United States District Court, N. D. California.

April 6, 1970.

Supplemental Memorandum April 10, 1970.

**848**

Broad, Busterud & Khourie, Michael N. Khourie, Royce H. Schulz, San Francisco, Cal., for plaintiffs, intervening plaintiffs and the class.

M. Laurence Popofsky, Richard L. Goff, Stephen V. Bomse, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR DIRECTED VERDICT

GEORGE B. HARRIS, Chief Judge.

This matter is before the Court on plaintiffs' motion for a directed verdict following the close of defendants' case case and the submission of the evidence. The Court being fully advised and having considered all of the testimony and evidence, including the numerous and lengthy oral arguments of counsel, all of the briefs, depositions and affidavits, has now reached the following decision and opinion.*

The issues, simply stated, are: (1) Are the defendants' standard contract and practices requiring the purchase of

---

* Earlier opinions regarding the propriety of the class action: Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal. 1967); Chicken Delight, Inc. v. Harris, District Judge, 412 F.2d 830 (9th Cir. 1969).

various packaging items, cookers and fryers, and certain mix preparations for food a tying agreement in violation of Section 1 of the Sherman Act? (2) If so, have the plaintiffs been injured by the said violation?

Tying arrangements, by definition agreements in which the seller offers two separate items for sale but will not sell the first item (or tying item) unless the buyer agrees to purchase the second item (or tied item), have uniformly been treated harshly by the United States Supreme Court. International Business Machines v. United States, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085 (1936); International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); Fortner Enterprises v. United States Steel, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). The instant case is conceptually an illustration of the classical tie. Defense counsel argues that this case involves a single product, "the Chicken Delight System," thus attempting to come within the single product ruling of Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953), wherein the traditional statement of the *per se* rule against tying arrangements was first enunciated by Mr. Justice Clark.

■■ However, the case of Susser v. Carvel Corp., 332 F.2d 505 (2nd Cir., 1964), which is factually most akin to this litigation, clearly holds contra. Both the majority and the dissent in Susser recognize that a trademark license which is granted on the condition that the licensee purchase other products can clearly be a "tying item" within the meaning of the above cases. This Court is in full accord with such a finding. In the economic context of present franchising trends, it is clear that a franchise license is marketable separate and apart from the various products which the franchisees are required to purchase from and through the franchisor.

■ In the case at bar, it is manifest that the license to use the Chicken Delight name, trademark and method of operations was a tying item in the traditional sense. The tied items were the required paper packaging products, the cookers and fryers and the food preparation mixes. Thus, for purposes of the Sherman Act, this Court finds as a matter of law that a tying agreement exists.

With respect to the essential ingredient of market control, the cases dictate but one conclusion—that as a matter of law Chicken Delight's admittedly unique, registered trademark combined with its power to impose the tie-in demonstrates the existence of sufficient market power to bring the case within the Sherman Act. A review of Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1957); United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); Fortner Enterprises v. United States Steel, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) and Advanced Business Systems & Supply Co. v. SMC Corp., 415 F.2d 55 (4th Cir., 1969) demands this result. To enmesh the jury in the rubric of market power in light of the clear guidelines laid down in the above cases should be unnecessary. This Court clearly may and does rule upon this question as a matter of law.

The *Northern Pacific Ry.* case gave the first indication that market power is evidenced by the fact of the tie-in. "*The very existence of this host of tying arrangements is itself compelling evidence of the defendant's great power * * *.*" 356 U.S. at pp. 7–8, 78 S.Ct. at p. 519.

The *Loew's* case likewise strongly indicated that market power can be inferred from the existence of the tie-in.

They [tying agreements] are an object of antitrust concern for two reasons— they may force buyers into giving up the purchase of substitutes for the tied product * * * and they may de-

stroy the free access of competing suppliers of the tied product to the consuming market * * *. A tie-in contract may have one or both of these undesirable effects when the seller, by virtue of his position in the market for the tying product, has economic leverage sufficient to induce his customers to take the tied product along with the tying item. * * * Even absent a showing of market dominance, the crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes. (citations omitted). 371 U.S. at pp. 44–45, 83 S.Ct. at p. 102.

■ In a footnote to the above quote, Mr. Justice Goldberg stated that "it should seldom be necessary in a tie-in sale case to embark upon a full-scale factual inquiry into the scope of the relevant market for the tying product * * * " Where the tying item is the subject of a patent or a copyright, sufficient market power is presumed.

In *Fortner*, Mr. Justice Black further narrowed the scope of inquiry into market power. "Accordingly, the proper focus of [market power] concern is whether the seller has the power to raise prices, or impose other burdensome terms such as a tie-in, with respect to any appreciable number of buyers within the market." 394 U.S. at p. 504, 89 S.Ct. at p. 1259.

■ Subsequently, citing *Fortner*, the Fourth Circuit in *Advanced Business Systems* held that "a seller's successful imposition of a tying arrangement on a substantial amount of commerce may be taken as proof of his economic power over the tying product." 415 F.2d at p. 62. Although this statement was made with regard to a violation of the Clayton Act, this Court is of the opinion that any distinction between the Sherman Act and Clayton Act with regard to the question of market power is wholly artificial. See, Handler, "Antitrust: 1969," 55 Cornell L.Rev. 161, 171 (1970).

■ For purposes of the Sherman Act, the effect on interstate commerce need merely be said to be "not insubstantial." International Salt Co. v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20 (1947). This test is fulfilled if the dollar amount is not *de minimis* or not "paltry." Fortner Enterprises v. United States Steel, 394 U.S. 495, 501– 502, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). In the present case (millions of dollars being involved), the dollar amount cannot be said to be *de minimis*. Thus, as a matter of law, this Court finds that the interstate commerce affected is "not insubstantial." A *per se* violation of the Sherman Act is therefore found to exist.

■■ When a *per se* violation of the Sherman Act exists, the areas of justification for a tie-in are indeed narrow. See, Baker, "Another Look at Franchise Tie-ins After *Texaco* and *Fortner*," 14 Antitrust Bulletin 767, 778 et seq. (1969). In this litigation, defendants propound four so-called justifications for the tie-in of the various required products. They are: (1) Quality control for protection of trademark good will; (2) New business justification; (3) A convenient accounting device for compensation of the trademark license; and (4) Franchisor's assurance of initial equipment and a continuing source of supply of essential items.

In the factual structure and posture of this case, the Court rules as a matter of law that the latter two asserted justifications cannot and do not justify so onerous an anti-competitive device as the tie-in agreement herein condemned.

Use of a tie-in cannot be justified as an accounting device for compensation for a trademark license. The defendants cite no relevant authority for such a proposition. In fact, such a justification is contrary to the uncontradicted evidence in this case, which evidence shows that the defendants charged no franchise fee or continuing royalty. Furthermore, an accounting method which specified a percentage of gross from the franchisees is just as convenient and has none of the anti-competitive effects of a tie-in.

Defendants' fourth attempted justification insists that they had a legal duty to assure franchisees of initial equipment and continuing supplies of other essential items. The admissions and the evidence are replete that defendants' alleged obligations could easily have been fulfilled without tying the purchase of those items to a trademark license. Defendants, like most franchisors, could have designated manufacturers and distributors who are available throughout the United States and anxious to do business as those sources of supply. This Court rules as a matter of law that such a justification is not available or defensive to the *per se* tying arrangement in this case.

In United States v. Jerrold Electronics Corp., 187 F.Supp. 545, 559 (E.D.Pa., 1960), aff'd per curiam 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed.2d 806 (1961), the Supreme Court recognized the so-called new business justification. In *Jerrold* the sole restraint approved by the Court was the tie-in of an engineering service contract for highly complex equipment, during the early stages of a business whose technology was advanced and unproven. As technological knowledge became more widespread and definitive, the Court indicated that the restraint could no longer be justified. This defense can certainly be held, as a matter of law, not to apply to the case at bar. The undisputed facts are that defendants started their business in 1952 and, for the period 1963 through 1969 and into 1970 (the period relevant to this litigation), the purchase requirements, although expanded in the number of products required, prevailed unchanged.

The defendants further assert that the tie-in of the paper products, the dip and spice mixes and the cookers and fryers can be justified as necessary quality control to protect the good will of their trademark. Heavy reliance is placed upon the opinion of Mr. Justice Friendly in the *Susser* case, supra. The Court agrees that this defense has sufficient vitality, as a factual consideration, to reach the jury as to the dip and spice mixes and as to the cookers and fryers. However, the Court rules as a matter of law that there can be no justification for the tie-in of the paper products.

The guiding language on the issue of quality control justification was stated by Mr. Justice Frankfurter in Standard Oil Co. of Cal. and Standard Stations v. United States, 337 U.S. 293, 305–306, 69 S.Ct. 1051, 1058, 93 L.Ed. 1371 (1948).

> Tying agreements serve hardly any purpose beyond the suppression of competition. The justification most often advanced in their defense—the protection of good will of the manufacturer of the tying device—fails in the usual situation because specification of the type and quality of the product to be used in connection with the tying device is protection enough. If the manufacturer's brand of the tied product is in fact superior to that of competitors, the buyer will presumably choose it anyway. *The only situation, indeed, in which the protection of good will may necessitate the use of tying clauses is where specifications for a substitute would be so detailed that they could not practically be supplied.* (emphasis supplied)

This language is fatal to defendants' contention as to quality control justification for the tied paper products.

Defendants' showing on paper packaging is nothing more than a recitation of the need for distinctive packaging to be used uniformly by all franchisees in identifying the hot foods. This was not contested. However, the admissions in evidence clearly demonstrate that the tied packaging was easily specifiable. In fact, the only specifications required were printing and color. Moreover, defendants have admitted that any competent manufacturer of like products could consistently and satisfactorily manufacture the packaging products if defendants furnished specifications. Those suppliers could have sold to the franchisees through normal channels of distribution. As a matter of law, therefore,

this paper products tie-in cannot be justified on any grounds within the contemplation of acceptable authority.

■ The *Susser* case, on the other hand, does indicate that where quality of food is a consideration the quality control defense is relevant to the issue of justification of a tie-in. In this regard, Mr. Justice Friendly stated:

Although instances of impossibility of control through specification may indeed be rare in cases involving the proper functioning of mechanical elements of a machine * * * such cases are scarcely relevant to the problem of controlling something so insusceptible of precise verbalization as the desired texture and taste of an ice cream cone or sundae; that Carvel was able to specify this to its source of supply, whose product it regularly checked, does not show that administration could be confided to 400 dealers. 332 F.2d at 520.

Such considerations are relevant to the asserted defense of Chicken Delight. The dip and spice mixes are alleged to be *secret* and to impart a unique and distinctive flavor to the final products. Likewise, the cooker is alleged to be unique and to prepare the food in a special manner. Contradictory testimony has been offered on this aspect of the litigation. As such, a question of fact exists for the jury to determine.

■ On the issue of fact of damage, this Court has determined as a matter of law that the fact of damage is established. Defense counsel persists in his argument that the upcharge in the tied products should be offset by a "reasonable value" assessed for the Chicken Delight license. The Court has ruled that this evidence of valuation is not relevant. The system was sold to the franchisees on a specific basis and the evidence is complete, reflects and memorializes the bases upon which the transactions were consummated with the franchisees. The contract and all written representations by the company stated that there were no franchise fees or royalty payments. This Court will not attempt to restructure the system of defendants into one which is legally constituted and then allow an offset for imaginary or suppositious royalty fees. Such would be directly contrary to the avowed policy of the Sherman Act.

Without an offset for the supposed value of the Chicken Delight trademark, the overcharge on the tied items is established. As a matter of law therefore, the Court finds the fact of damage.

To summarize, the Court finds as a matter of law that there is an unlawful tie-in arrangement; that sufficient market control exists; that a "not insubstantial" amount of interstate commerce is affected; that no justification exists with respect to the continuity of supply of paper products; that neither the alleged justifications of convenient accounting device nor continuing source of supply are defenses in this litigation; that the new business justification is clearly inapplicable to this case; and that the fact of damages is established.

The Court rules that the jury may consider the asserted quality control justification as to the dip and spice mixes and cookers and fryers under appropriate instructions.

To the extent consistent with the above decision and opinion, plaintiffs' motion for directed verdict must be, and the same is hereby, granted.

Defendants' motion for directed verdict must be and the same is hereby denied.

SUPPLEMENTAL MEMO-
RANDUM

Thereafter and on April 10, 1970, the jury, after oral arguments on behalf of the respective parties and instructions as to the law by the Court, regularly returned the following special verdicts with respect to the several issues tendered, under the defendants' theory of alleged

justification on the part of the defendants:

### JUSTIFICATION ISSUE—DIP AND SPICE MIX

#### Special Verdict 2A

We the jury find that requiring franchisees to purchase dip and spice mix solely from Chicken Delight has not been legally justified under instructions given by the Court.

(s) N. J. Davis

Jury Foreman

---

### JUSTIFICATION ISSUE— COOKERS AND FRYERS

#### Special Verdict 3A

We the jury find that requiring franchisees to purchase cookers and fryers solely from Chicken Delight has not been legally justified under instructions given by the Court.

---

In addition, under the Court's order and direction, the following Special Verdict No. 1 was regularly returned by said jury:

### DIRECTED VERDICT ON CERTAIN ISSUES

#### Special Verdict No. 1

We, the jury, pursuant to direction and instruction from the Court find (1) that the arrangement requiring Chicken Delight franchisees to purchase their full requirements of packaging goods, dip and spice mix, and cookers and fryers from their franchisor is a tying arrangement, (2) that Chicken Delight, by reason of its unique, registered trademarks, possessed sufficient economic power to induce its franchisees to buy the tied products, (3) that a not insubstantial dollar volume of interstate commerce in the tied products has been adversely affected, (4) there is no legal justification for the tie-in of packaging products and it is therefore unlawful, and (5) plaintiffs and members of the class have been damaged as a result of being required to purchase their full requirements of packaging goods, dip and spice mix and cookers and fryers.

(s) N. J. Davis

Jury Foreman