FALLS CHURCH BRATWURSTHAUS,
INC., Plaintiff,

v.

BRATWURSTHAUS MANAGE-
MENT CORPORATION,
Defendant.

The SIXTY CORPORATION OF
VIRGINIA, Plaintiff,

v.

BRATWURSTHAUS MANAGE-
MENT CORPORATION,
Defendant.

Civ. A. Nos. 39–71–A, 40–71–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Jan. 11, 1973.

George A. Simpson, Fairfax, Va., for
Falls Church Bratwursthaus, Inc.

Michael S. Horwatt, Reston, Va., for
Bratwursthaus Management Corpora-
tion.

Laurence G. Roman, Arlington, Va.,
for Sixty Corporation of Virginia.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

These suits were brought under § 1 of
the Sherman Act, 15 U.S.C. § 1, and §§
4 and 16 of the Clayton Act, 15 U.S.C.
§§ 15 and 26, alleging

unlawful "tie-ins"—

conspiracy between the franchiser and
its suppliers—

franchisor's illegal refusal to deal
with the franchisee—

unlawful restraint upon alienation—
and unreasonable restraint of trade.

Each of the plaintiffs seeks treble damages and counsel fees, and asks that their respective franchise agreements be declared null and void, and for such other relief as is necessary to protect their respective interests.

The defendant denies all of the plaintiffs' allegations and counterclaims for non-payment of franchise fees and breach of other conditions of the franchise agreements.

Both of the plaintiffs responded to the counterclaim and sought declaratory judgments under 28 U.S.C. § 2201, adjudging that their respective franchise agreements were null and void under both federal and state laws.

Shortly thereafter the defendant sought an injunction to restrain the plaintiffs from continuing to use the "Bratwursthaus" name and system during the pendency of these suits.

Upon hearing, the Court required the plaintiffs to pay their respective franchise fees into the registry of the Court so long as they continued to use the name "Bratwursthaus" and to accept the benefits of their franchise agreements. Upon final determination of this action the Court will then determine whether the said franchise fees or any part thereof shall be returned to the plaintiffs or be paid to the defendant.

The plaintiffs have been depositing the franchise fees in the registry of this Court as directed and are continuing to use the name "Bratwursthaus" and some or all of the other benefits set forth in their respective franchise agreements.

Bratwurst House, Inc., of St. Cloud, Minnesota, the record title holder and registrant for the service marks in question, was declared bankrupt on December 11, 1969 by the United States District Court for the District of Minnesota.

On February 12, 1972 the plaintiffs purchased all of the trustee's right, title and interest to the bankrupt's assets, including the service marks, designs, emblems, secret recipes, methods of operation know-how and any and all good will —choses in action and all rights and defenses under royalty and licensing agreements, for the sum of $3,000.00.

The plaintiffs terminated the defendant's licensing agreements April 30, 1972.

Most of the evidence in this case was introduced by stipulation and through exhibits—Only the pertinent portions thereof will be mentioned herein—If any of the parties request more detailed findings for appeal purposes, the Court will then adopt such of the plaintiffs' proposed findings as it deems proper.

Bratwurst House, Inc., of St. Cloud, Minnesota, owned the registered service marks in question until February 18, 1972—They were registered in the plaintiffs' names on that date.

The defendant was the exclusive owner of the Bratwursthaus franchise system for the east coast of the United States until February of 1972.

Falls Church Bratwursthaus, Inc. was authorized on or about November 28, 1967 to open and operate a Bratwursthaus restaurant in Falls Church, Virginia, in conformity with the terms and conditions of a written franchise agreement. It paid the defendant $40,000.00 to cover the furnishing, installation and supplying of materials, equipment and supplies incident to opening its restaurant.

The defendant corporation authorized The Sixty Corporation of Virginia to open and operate a Bratwursthaus restaurant in Woodbridge, Virginia, as of August 1, 1968 in conformity with a similar franchise agreement. The Sixty Corporation paid the defendant $50,000.-00 to cover the furnishing, installation and supplying of materials, equipment and supplies incident to opening its restaurant.

The defendant terminated The Sixty Corporation's franchise in November of 1970 and notified the company of its intention to purchase its restaurant equipment pursuant to paragraph four of the franchise agreement.

The defendant terminated the Falls Church Bratwursthaus franchise agreement December 18, 1970.

Both plaintiffs elected to deposit their franchise fees in the registry of the Court and to continue their restaurant operations pending the outcome of this suit.

Paragraph four of The Sixty Corporation franchise agreement provides that upon termination for any cause, the defendant has the right to purchase all or part of The Sixty Corporation's furniture, fixtures, signs and other chattels at forty per cent of their original cost.

The Falls Church Bratwursthaus, Inc. franchise agreement contains certain buy-back provisions upon termination.

Both franchise agreements contain restrictions on the right of the plaintiffs to operate competing businesses.

Both require the plaintiffs to purchase their supplies either from the defendant or from a source designated by the defendant.

Each was required to pay the defendant a franchise fee equaling five per cent of gross sales.

Both were required to sell Schmidt's beer—Schmidt paid the defendant a rebate of $1.00 per keg.

The defendant required the plaintiffs to sell Miller's beer beginning May 19, 1969—Miller gave the defendant a rebate on beer sold.

The Sixty Corporation refused to change over to Miller's beer.

The defendant also demanded, and obtained for a period of time, a rebate of two cents per dozen on rolls sold Bratwursthaus restaurants.

Schluderberg-Kurdle Company, Inc., the defendant's approved supplier of sausage, paid the defendant ten cents a pound on all sausage sold in Bratwursthaus restaurants during the years 1968, 1969 and 1970.

The ten cents per pound commission was initially paid to Bratwurst House, Inc., of St. Cloud, Minnesota, and later to the defendant pursuant to instructions from the defendant—The commissions are now being held in escrow pursuant to the request of counsel for the plaintiffs.

The record shows that Falls Church Bratwursthaus, Inc. purchased 21,410 pounds of sausage at a cost of $17,834.00 and 1,837 kegs of Schmidt's beer at a cost of $30,083.00.

The Sixty Corporation of Virginia purchased 12,797 pounds of sausage at a cost of $10,835.00 and 2,045 kegs of Schmidt's beer at a cost of $33,890.00.

It was stipulated that sausage and keg beer sales to Bratwursthaus restaurants in Maryland and Virginia during the years 1968, 1969 and 1970 were in excess of $400,000.00.

The defendant corporation leased the premises used by the Falls Church Bratwursthaus restaurant. The president concedes that it was understood by all concerned that the lease would be assigned to the plaintiff corporation.

The Supreme Court of the United States, in Northern Pacific Railway v. United States, 356 U.S. 1 (1958), at 5 and 6, 78 S.Ct. 514, at 518, 2 L.Ed.2d 545, said:

" . . . [A] tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. . . ."

It is rather clear from the record here made that the defendant corporation tied the right to use the registered Bratwursthaus service marks and know-how to the purchase of furniture, fixtures, food products, beverages and supplies. (The fact that the service marks were registered in the name of another is immaterial—The defendant has the exclusive right to license the use of the marks.)

A similar arrangement was declared invalid in Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971).

This Court holds that the tying agreements here are illegal and in violation of § 1 of the Sherman Act.[1]

The tying item in Siegel was the license to use the trademark and method of operation—The tied items were the cookers and fryers, packaging products and mixes.

As was said in Siegel, we see no reason why the presumption that exists in the case of patent and copyright does not equally apply to the trademark. See United States v. Loew's, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948); and International Salt v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

Thus, the Court rules as a matter of law that the license to use the Bratwursthaus service marks possessed sufficient market power to bring this case within the Sherman Act.

Although the Bratwursthaus Management Corporation's franchise business was not as extensive as Chicken Delight and many other franchise systems, its total amount of business in terms of dollar volume was more than enough to put it beyond the "de minimis" category referred to in Fortner Enterprises v. United States Steel, 394 U.S. 495, 89 S. Ct. 1252, 22 L.Ed.2d 495 (1969).

Under most of the post-Fortner decisions, any amount of commerce restrained by an illegal tie-in agreement constitutes a not insubstantial amount of interstate commerce.

The parties here have stipulated that sausage and keg beer sales throughout the Bratwursthaus system in Maryland and Virginia were in excess of $400,000.00 for 1968, 1969 and 1970.

Therefore the Court concludes that a not insubstantial amount of commerce was affected by the Bratwursthaus arrangement.

The defendant's claimed business justification for its required tie-in purchases, namely, that it was a new business attempting to gain a foothold in the fast-food industry and that it had only a few franchises and was struggling to build its business, is not sufficient to place it beyond the reach of the antitrust laws.

The question here is whether the plaintiffs have suffered injury by virtue of the unlawful arrangement to which they were subjected.

Falls Church Bratwursthaus, Inc. claims treble damages in the amount of $2,019.00 arising from the rebate received by the defendant from the sale of beer. The evidence supports this claim—Judgment for that amount will be awarded.

The Sixty Corporation of Virginia claims treble damages in the amount of $1,506.00 arising from the rebate received by the defendant from the sale of beer. The evidence supports this claim—Judgment for that amount will be awarded.

Both admit they have failed to establish a basis for recovery arising from the sale of meat—Therefore no damages will be awarded in re this claim.

Neither offered any evidence in support of their respective claims for damages arising from the forced purchases of furniture, fixtures, food products, supplies and beverages other than beer—Therefore no damages will be awarded on these claims.

Counsel for the plaintiffs are entitled to an award of reasonable attorney fees—They will be awarded upon the filing of an appropriate claim.

Because there are only two illegal contracts in this case does not make it inap-

---

1. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. . . . " 26 Stat. 209 (1890); as amended, 15 U.S.C. § 1.

propriate for the granting of injunctive relief. See United States v. Loew's, supra.

Therefore, the defendant will be enjoined from enforcing its franchise agreement with each of the plaintiffs and from interfering with the plaintiffs' operation of their respective restaurants or with their right to buy their food products, beverages and supplies in the open market.

Whether they can continue the use of the Bratwursthaus service marks without paying the reserved franchise fees is now moot as the plaintiffs have purchased the service marks from the trustee for Bratwurst House, Inc. of St. Cloud, Minnesota, bankrupt.

The plaintiffs' request that the defendant corporation be enjoined from acting as a distributor for the Bratwursthaus franchise on the east coast will be denied. The right to so do was neither heard nor determined in this case.

The defendant will be directed to assign its lease for the premises now being used by the Falls Church Bratwursthaus restaurant to Falls Church Bratwursthaus, Inc., provided Falls Church Bratwursthaus, Inc. properly indemnifies the defendant from any and all financial losses resulting therefrom.

The defendant's counterclaim for nonpayment of franchise fees and breach of other conditions of the franchise agreements will be denied.

The defendant terminated these franchise agreements in November and December of 1970 because the plaintiffs would not buy their beer from the designated suppliers.

One will not be permitted to terminate a contract without cause and reserve the right to collect the reserved franchise fees—especially so where the Court declares the contract to be illegal, as was done here—Illegal contracts are unenforcible.

Therefore, the franchise fees that were paid into the registry of the Court during the pendency of this suit will be returned to the plaintiffs.

Counsel for the plaintiffs should prepare an appropriate judgment in accordance with this memorandum opinion, submit it to counsel for the defendant for approval as to form, and then to the Court for entry.