Robert J. HIRSH, on his own behalf and on behalf of all others similarly situated, Plaintiff,

v.

MARTINDALE–HUBBELL, INC., Defendant.

No. CIV 79–226–TUC–RMB.

United States District Court, D. Arizona, Tucson Division.

Jan. 8, 1981.

---

Erik M. O'Dowd, O'Dowd & Burke, Tucson, Ariz., for plaintiff.

Philip E. von Ammon, C. Owen Paepke, Fennemore, Craig, von Ammon & Udall, Phoenix, Ariz., for defendant.

BILBY, District Judge.

This case involves allegations by plaintiff-attorney Robert J. Hirsh that defendant Martindale-Hubbell, Inc. ties the purchase of professional cards to the purchase of its multi-volume legal directory in violation of the antitrust laws. This action involves cross motions for summary judgment on the issue of *per se* liability under section 1 of the Sherman Act.[1]

 A tie-in is an arrangement in which a party sells one product on the condition that the buyer also purchase a differ-

---

1. The Court does not address the issue of liability under section 1 of the Sherman Act under a rule of reason analysis. Although the defendant offhandedly raised the issue by advancing a unilateral-refusal-to-deal argument, the issue was not properly or adequately presented to the Court. The Court finds that this argument is inapplicable to a *per se* tying analysis. Additionally, the defendant's assertion—unilateral activity, whatever its purpose or effect, cannot violate section 1—is refuted by *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 614, 624–26, 73 S.Ct. 872, 883, 888–90, 97 L.Ed. 1277 (1953).

ent product.[2] If certain elements exist, tying arrangements are presumptively illegal without a specific showing of any unreasonable restraints of trade or anticompetitive effect.[3] Once a buyer has established the existence of a tie-in, a seller violates section 1 if the party possesses sufficient economic power in the tying product market appreciably to restrain competition in the tied product market and if a not insubstantial amount of interstate commerce in the tied market is effected.[4] A tie-in necessarily involves two separate, distinct products because the essence of its unlawfulness is the use of the dominant product to compel the purchase of a second distinct product.[5] Because the court finds that the professional card and the directory are not separate, distinct products, plaintiff's motion for summary judgment is denied as a matter of law and defendant's motion for summary judgment is granted as a matter of law.[6]

Defendant annually publishes the *Martindale-Hubbell Law Directory*. The 1979 edition consists of seven volumes. Six of the volumes contain listings of virtually all American and Canadian attorneys and of certain attorneys for foreign countries. The seventh volume contains concise digests of the statutory laws of the several states, the federal government, the Canadian government and provinces, and several foreign countries, various uniform laws and the ABA "redbook." The volumes containing the law lists are divided into the Geographical Bar Roster, the Patent Lawyers' Roster and the Biographical Section. The geographical and patent lawyers sections consist of individual, alphabetical listings by cities of individual attorneys and law firms compiled and published at no charge to the parties listed and of informative cards that can be purchased by any practicing attorney or law firm and that provide information additional to that contained in the individual listings. The biographical section contains professional cards that can be purchased only by attorneys and law firms who attain an "av" or "bv" rating under the Martindale-Hubbell rating system and that provide information additional to that appearing in either the individual listings or the informative cards.

Martindale-Hubbell has a subscription requirement policy; defendant requires, as a condition of purchase by a lawyer or law firm of a professional card in the biographical section or of an informative card in the geographical section, that the buyer also purchase the law directory itself. A purchaser of a professional card must also purchase an informative card in each annual directory in which one's professional card appears. To maintain a professional card each year, an attorney must purchase the directory each year. Martindale-Hubbell exempts two groups of attorneys from the subscription requirement; foreign attorneys may purchase advertising space without subscribing to the directory as may

2. *E. g., Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518–19, 2 L.Ed.2d 545 (1958); *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 613–14, 73 S.Ct. 872, 883, 97 L.Ed. 1277 (1953); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1211 (9th Cir. 1977).

3. *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 518–19, 2 L.Ed.2d 545 (1958); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1211 (9th Cir. 1977).

4. *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 6, 78 S.Ct. 514, 519, 2 L.Ed.2d 545 (1958); *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 608–09, 73 S.Ct. 872, 880–81, 97 L.Ed. 1277 (1953); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1212, 1214 (9th Cir. 1977).

5. *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 614, 73 S.Ct. 872, 883, 97 L.Ed. 1277 (1953); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1214 (9th Cir. 1977); *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 47 (9th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972).

6. Defendant conceded that its subscription requirement affected a not insubstantial amount of commerce. Because the product separability issue disposes of the motion, the Court need not address the economic power issue.

In its decision, the Court is not relying on the opinion of Professor Richard Posner expressed in his affidavit submitted by the defendant.

"av" and "bv" rated attorneys who share office space with other attorneys one of whom subscribes to the directory.

Martindale-Hubbell sells the directory by itself to lawyers, public agencies, libraries, businesses and other purchasers. Generally, lawyers must buy the entire directory. Defendant will only sell individual volumes of the directory to entities who have already purchased the entire directory. Defendant also sells individual law digest volumes to certain purchasers, but not to attorneys. Martindale-Hubbell advertises the sale of its directory independently of the sales of the advertisements. In 1979, defendant spent approximately $5,000 on advertising the directory. The circulation of the *Martindale-Hubbell Law Directory* in 1979 was 38, 358.

Defendant itemizes the cost of the directory, the professional card and the informative card as separate components of the total price of the subscription. In 1979 the prices were as follows: the price of the directory was $110; the price of an informative card was $10 for a card change and $17 per attorney in the card up to twelve attorneys; the price of a professional card was $65 per one-sixth of a page; the price of an individual volume of the directory was $90. The price for the directory remained $110 regardless of whether the purchaser bought advertising or merely the directory. When plaintiff purchased his professional card in 1979, he paid a total of $366: $110 for the directory plus $61 for the informative card (three attorneys) plus $195 for the professional card (three-sixth of a page).

Additionally, defendant maintains separate itemized costs of manufacturing the directory and of soliciting advertising. Defendant also maintains separate income figures derived from the sales of the directory itself and from the sales of the advertising within the directory.

Plaintiff contends the professional card and the directory are wholly separate products; they are created separately, they are priced separately, and they are sold separately. Additionally, plaintiff argues the items are functionally distinct: the professional card provides attorneys with a means of disseminating information about themselves to an audience while the directory provides lists of and information about other attorneys. Plaintiff characterizes the alleged tying agreement as an arrangement whereby to purchase one's advertisement, one must purchase back everybody else's advertising. Moreover, plaintiff points out that economically Martindale-Hubbell treats the sale of advertising and the sale of the directory separately on its accounting books.

Defendant claims that under the "function of the aggregation" test for product separability, if two items together form one functional unit, no tie-in exists. The function of the professional card and the directory is to generate referrals for the advertisers. This function requires both advertising and circulation of the directory. Defendant offers prospective customers an established and guaranteed circulation; the circulation makes the advertising space valuable. Thus, the circulation generated by the subscription requirement is an integral part of a single economic unit that operates as a lawyer information and referral service. Defendant relies on *Principe v. McDonald's Corp.*, 631 F.2d 303 (4th Cir. 1980), in which the court maintained the following:

> Where the challenged aggregation is an essential ingredient of the franchised system's formula for success, there is but a single product and no tie in exists as a matter of law.

*Id.* at 309.

The Ninth Circuit court examines the "function of the aggregation" to ascertain whether a package of separable items should be regarded as one or more products for tie-in purposes. *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1215 (9th Cir. 1977); *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 48 (9th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232

(1972).[7] Hence, in *Siegel v. Chicken Delight, Inc.*, the court, maintaining that a trademark merely reflects goodwill and quality standards, held that common items were distinct from and not essential to a trademark because the trademark did not protect the items used, but, rather, protected how they were used and the resultant product. 448 F.2d at 49. The Ninth Circuit court also has maintained that the existence of dual markets is crucial to a finding of distinct products. *Sobrato v. Prudential Insurance Co. of America*, 632 F.2d 786 (9th Cir. 1980); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d at 1214. The court has reiterated, however, that considerations such as legitimate cost savings and whether the items are normally sold or used as a unit in fixed proportions would relieve an aggregation of separable items from being "generically" distinct. *Moore v. Jas. H. Matthews & Co.*, 550 F.2d at 1215.

■ If there were no *Martindale-Hubbell Law Directory*, there would be no professional cards. Hence, the directory is essential to and not distinct from the professional card because the professional card derives its existence from the directory. Moreover, when an advertising attorney uses the law directory, the attorney typically uses both the biographical and the geographical sections. If an attorney needs to refer work to a lawyer in an unfamiliar legal community, the referring attorney usually will look at the listing of attorneys in the geographical section to find the names of the rated attorneys in a particular town. The referring attorney will then turn to the professional cards in the biographical section to garner background information on the attorneys to facilitate the choice of an associating attorney. Likewise, when an attorney receives a referral from an unfamiliar attorney, the referred attorney will look up the referring attorney in the geographical section to determine the attorney's rating and in the biographical section to ascertain the attorney's background. The Court thus finds that the professional card and the directory function as a single unit and the subscription requirement of Martindale-Hubbell does not run afoul of section 1 of the Sherman Act.[8]

---

7. Although the Supreme Court has never established standards by which to determine product separability, the Court has identified factors of particular arrangements which were determinative. In *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953), the Supreme Court found no tying arrangement to exist where the products were indistinguishable because, the products being identical and their market the same, no dominant tying product existed to exert leverage in one market to the exclusion of sellers in another. *Id.* at 614, 73 S.Ct. at 883. In *Fortner Enterprises, Inc. v. United States Steel Corp. (Fortner I)*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969), however, the Court found a tie-in where the amount of credit extended by one corporation was conditional on the purchase of products from a separate corporation and was in excess of the sum of money needed to procure those products. *Id.* at 507, 89 S.Ct. at 1260.

8. The physical layout of the directory is irrelevant to the decision of the Court. The result would be the same if the professional cards were in volumes separate from the remainder of the directory. Both the professional cards and the directory are used for the same purpose—to place information regarding attorneys in an accessible format.