Harry LYNN, Plaintiff,

v.

Joseph W. VALENTINE and J. W. Valentine Co., Inc., Defendants and Third Party Plaintiffs (Louis LEVY, Third Party Defendant).

United States District Court
S. D. New York.

July 18, 1956.

Conrad & Smith, New York City, for plaintiff.

Henry D. Valentine, New York City, for defendants and third party plaintiffs.

Joseph Nurnberg, New York City, for third party defendant.

LEVET, District Judge.

This is a motion by defendants, Joseph W. Valentine and J. W. Valentine Co., Inc., for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., dismissing three counterclaims contained in the answer of the third-party defendant, Louis Levy, on the ground that the alleged counterclaims fail to state any claim against said defendants upon which relief can be granted.

Plaintiff herein is suing for an alleged conversion by defendants of 416 shares of stock of Laurel Textiles, Inc. (hereinafter referred to as "Laurel"), which plaintiff claims were owned by him and delivered to defendant Joseph W. Valentine as security for a $5,000 loan. Plaintiff further alleges that although said defendant agreed not to assign, sell or transfer said stock, he did in fact transfer and deliver the certificate of stock to defendant J. W. Valentine Co., Inc., and that said defendants, Joseph W. Valentine and J. W. Valentine Co., Inc., refused to return the stock to plaintiff when he tendered the sum of $5,000 in payment of the loan.

Defendants admit in their answer that the stock certificate was delivered to them as security for the $5,000 loan, but they allege that the third-party defendant, Louis Levy, represented that said stock was his property; that the stock certificate was originally issued to Louis Levy and bore the indorsement of said Louis Levy on the reverse side thereof; that they advanced to Louis Levy a further sum of $15,901.30, which was also secured by said stock, and that they would not have made the loans or accepted the stock as collateral had they known

that the stock certificate was plaintiff's property, since certain tax liens and judgments in excess of $500,000 had been recorded against plaintiff in favor of the United States of America. The answer also contains a counterclaim against plaintiff for alleged false representations.

In the third-party complaint which defendants served upon Louis Levy, it is alleged that 416 shares of Laurel stock were owned by Levy, who represented that he was the owner thereof and consented to the delivery of the stock to defendant Joseph W. Valentine as security for the $5,000 loan to plaintiff. Defendants also allege that on or about October 10, 1955, Louis Levy entered into an agreement with defendant J. W. Valentine Co., Inc., a copy of which is annexed to the third-party complaint. The agreement recites that Louis Levy was then indebted to J. W. Valentine Co., Inc., in the amount of $75,000 and that said indebtedness was to be increased by an additional loan of $15,000, in consideration for which Levy invested J. W. Valentine Co., Inc., with an irrevocable power of attorney and proxy with respect to the Laurel stock, then in defendant's possession or which may in the future come into its possession. The agreement further recites that defendant J. W. Valentine Co., Inc., was to hold the stock as collateral security for the payment of Levy's indebtedness, and in the event of liquidation of Laurel, any sum available for distribution to Levy was to be paid to J. W. Valentine Co., Inc., in satisfaction of the aforesaid indebtedness.

The answer of the third-party defendant, Louis Levy, admits that he signed the power of attorney and proxy, but alleges that such signature was fraudulently obtained by defendants. Levy's answer includes, inter alia, three counterclaims addressed to the third-party complaint (i. e., against defendants Joseph W. Valentine and Joseph W. Valentine Co., Inc.). In the first counterclaim, it

is alleged that Levy is entitled to receive from defendants at least 555 shares of stock of Laurel, free and clear of any claims or offsets in favor of defendants, plaintiff, or any other person. Levy alleges that on March 2, 1950, 1,387 shares of Laurel were pledged with one Sol Entin and that Levy and the defendants paid the indebtedness due Entin. It is further alleged that by reason of his payment of part of the Entin claim, Levy became entitled to at least 555 shares of stock, "but notwithstanding such interest, and in fraud thereof, said defendants caused to be issued to themselves the entire issued and outstanding stock of said Laurel Textiles, Inc. * * *."

The counterclaim goes on to state that Levy demanded of the defendants that they cause to be issued to him a certificate for 555 shares of stock of Laurel and that defendants have refused to comply with his demand. Notwithstanding this allegation, Levy then asserts in the very next paragraph that on February 25, 1953, "said defendants caused to be issued in the name of Louis Levy said 1387 shares of such stock." The third-party defendant's counterclaim then nebulously recites several further transactions involving shares of Laurel stock, and states:

"29. Defendants, notwithstanding third-party defendant's absolute claim to said 555 shares of Laurel Textiles, Inc. stock, and in complete derogation of his investment interest, used the third-party defendant as a catspaw for their own purposes and induced him, without consideration and in fraud of his rights, to enter into various fictitious arrangements as above set forth, thereby improperly subordinating his rights to encumbered stock of Laurel Textiles, Inc., to colorable loans, options and arrangements."

The third-party defendant's second counterclaim to the third-party complaint asserts that Levy was the owner of 416

shares of Laurel stock which were unlawfully taken by plaintiff and which thereafter came into the possession of the defendants. It is further alleged that the defendants have refused to return said stock to Levy. The third counterclaim is similar in purport to the second, except that it relates to 555 shares of Laurel stock.

The three above-mentioned counterclaims contained in the third-party defendant's answer are manifestly inartistically drawn, contain patently inconsistent allegations and fail to state many facts which are essential to constitute a cause of action. However, it cannot be said that under no circumstances is the third-party defendant entitled to relief should he prove the necessary facts in support of his claim. Since on motions to dismiss pleadings the allegations contained therein must be taken as true, it is apparent that the three counterclaims advise defendants that the third-party defendant is asserting claims against them for stated numbers of shares of stock of Laurel, free and clear of any claims or offsets in favor of the defendants, the plaintiff, or any other person.

Rule 8(e) (1) of the Federal Rules of Civil Procedure provides that pleadings shall be simple, concise and direct. Simplicity in form is the cardinal rule with respect to pleadings. This principle was stated by Judge Clark in Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774, as follows:

"It would seem, however, that he has stated enough to withstand a mere formal motion, directed only to the face of the complaint, and that here is another instance of judicial haste which in the long run makes waste. Under the new rules of civil procedure, there is no pleading requirement of stating 'facts sufficient to constitute a cause of action,' but only that there be 'a short and plain statement of the claim showing that the pleader is entitled

to relief,' Federal Rules of Civil Procedure, rule 8(a), 28 U.S.C.A. following section 723c; and the motion for dismissal under Rule 12(b) is for failure to state 'a claim upon which relief can be granted.' * * *

"We think that, however inartistically they may be stated, the plaintiff has disclosed his claims that the collector has converted or otherwise done away with two of his cases of medicinal tonics and has sold the rest in a manner incompatible with the public auction he had announced —* * * but giving the plaintiff the benefit of reasonable intendments in his allegations (as we must on this motion), the claim appears to be in effect that he was actually the first bidder at the price for which they were sold, and hence was entitled to the merchandise. Of course, defendant did not need to move on the complaint alone; he could have disclosed the facts from his point of view, in advance of a trial if he chose, by asking for a pre-trial hearing or by moving for a summary judgment with supporting affidavits. But, as it stands, we do not see how the plaintiff may properly be deprived of his day in court to show what he obviously so firmly believes and what for present purposes defendant must be taken as admitting. * * * *" 139 F.2d at page 775.

This rule was also discussed by Judge Medina in Forstmann Woolen Co. v. Murray Sices Corporation, D.C.S.D.N.Y. 1950, 10 F.R.D. 367, where he said:

"The Federal Rules of Procedure prescribe a simple method whereby claims and defenses may be stated. Rule 8, F.R.C.P. The rules, as construed, do not contemplate correction of inartistic pleadings by motion to strike, in the absence of some prejudice to the opposing party. See Moore's Federal Practice 2317–18 (2d Ed., 1948). If the alle-

gations attacked are such that under some contingency they may raise relevant issues, they will not be stricken. Moore, op. cit. supra, at 2318; see American Machine & Metals Co. v. De Bothezat Impeller Co., D.C.S.D.N.Y.1948, 8 F.R.D. 306." 10 F.R.D. at page 369.

Although the three counterclaims do state claims for which relief may be granted, they fail to comply with Rule 9(b), which prescribes that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The allegations of fraud contained in the third-party's answer and first counterclaim fail to particularize the circumstances constituting the alleged fraud. General allegations of fraud are not sufficient, since Rule 9(b) requires particularity as to fraudulent acts so as to inform the adversary of what the pleader claims constituted the alleged fraudulent conduct. Dixie Mercerizing Company v. Triangle Thread Mills, D.C.S.D.N.Y. 1955, 17 F.R.D. 8; Scervini v. Miles Laboratories, Inc., D.C.S.D.N.Y.1951, 11 F.R.D. 542; C. I. T. Financial Corporation v. Sachs, D.C.S.D.N.Y.1950, 10 F. R.D. 397. However, in the light of Rule 8(f), which states that "All pleadings shall be so construed as to do substantial justice", this Court does not believe that the third-party defendant's failure to particularize the allegations of fraud in his answer and first counterclaim justifies a dismissal of said pleadings. Thus, in Levenson v. B. & M. Furniture Co., 2 Cir., 1941, 120 F.2d 1009, the Court of Appeals said:

"The petition at bar does not indeed allege the fraud with as much particularity as is desirable. But the omission is not fatal; it is only a pleading, and Rule 8(f), 28 U.S. C.A. following section 723c, demands that it 'shall be so construed as to do substantial justice.' Its general purport is plain enough, and if the debtor had really any doubt

about its meaning—which plainly it had not—it had, and still has, relief under Rule 12(e); the day has passed when substantial interests stand or fall for such insubstantial reasons." at pages 1009–1010.

Nevertheless, in response to defendants' request "for such other and further relief as to this Court may seem just and proper," the third-party defendant is directed to serve an amended answer within ten days after notice of the order herein, in which he shall give a more definite statement of the particulars relating to the allegations of fraud contained in his answer and first counterclaim.

Settle order on notice.