Jerome **SELIGSON** and Dorothy Seligson, h/w

v.

The **PLUM TREE, INC.**, et al.

Civ. A. No. 71–1998.

United States District Court, E. D. Pennsylvania.

July 19, 1973.

Perry S. Bechtle, Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiffs.

Martin Howard Katz, Michael J. Ambrose, Bridgeport, Pa., for defendants.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

This is an action for alleged violation of the antitrust laws, arising out of a franchise agreement between plaintiffs and defendant, The Plum Tree, Inc. ("Plum Tree"). Defendants have moved to dismiss plaintiffs' second amended complaint ("the complaint") for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to assert these claims as a mandatory counterclaim to Plum Tree, Inc. v. Seligson, et al., Civil Action No. 71–1780. Defendants also have moved to drop certain parties and to strike plaintiffs' demand for a jury trial. Plaintiffs have moved to add certain parties.

## I. BACKGROUND

This action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, seeking recovery against defendants for damages allegedly sustained by plaintiffs as the result of defendants' alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. On November 3, 1972, we dismissed plaintiffs' first amended complaint for lack of jurisdiction over the subject matter, with leave to amend, because it was devoid of any factual allegations demonstrating that defendants' conduct occurred in or affected interstate commerce. Seligson v. Plum Tree, Inc., 350 F.Supp. 440, 441 (E.D.Pa.1972).

The second amended complaint consists of six counts, four counts alleging violations of the antitrust laws, including an unlawful tying arrangement and a price-fixing scheme, and two counts based upon pendent jurisdiction alleging fraud and breach of contract. According to the complaint, plaintiffs Jerome Seligson and Dorothy Seligson entered into a franchise agreement with Plum Tree in November 1969. Plum Tree is in the business of franchising gift stores, and has approximately 46 such franchisees operating throughout the United States.

Plaintiffs seek to represent a class of persons consisting of all past and present Plum Tree franchisees. On June 30, 1972, pursuant to F.R.Civ.P. 23(c)(1), we conditionally granted plaintiffs' motion that this action may be maintained as a class action. Seligson v. Plum Tree, Inc., 55 F.R.D. 259 (E.D.Pa.1972).

## II. MOTIONS TO DISMISS

### A. *Interstate Commerce*

In their second amended complaint, plaintiffs have added a nine-paragraph subsection titled "Interstate Commerce." This subsection includes the following allegations:

"14. Plum Tree is registered to do business and/or does business directly or through franchisees in at least 44 States.

"15. Plum Tree franchisees are located in at least 22 States.

"16. Plum Tree purchases merchandise for resale and/or shipment in interstate commerce to franchisees, in connection with both initial inventory and ongoing business, from vendors in at least 20 States. Each franchisee likewise purchases merchandise from vendors in approximately 20 States.

"17. Plum Tree purchases supplies and equipment for setting up and opening each franchised Plum Tree store from vendors in at least four (4) States and the District of Columbia.

"18. In connection with the acts, actions, conspiracies and illegal conduct alleged herein defendants used the means and instrumentalities of interstate commerce, including telephones and the United States Mail. Defendants solicited prospective franchisees in various States throughout the United States and offered and induced them to move to other States in which defendants proposed to locate Plum Tree stores."

In Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, at page 739, fn. 3 (C.A. 9, 1954), the court said:

"A case under the antitrust laws, so far as the interstate commerce element is concerned may rest on one or both of two theories:

"(1) That the acts complained of, occurred within the flow of interstate commerce. This is generally referred to as the 'in commerce' theory.

"(2) That the acts complained of, occurred wholly on the state or local level, in intrastate commerce, but substantially *affected* interstate commerce.

"Under both of these theories, the transactions complained of must *affect or have an effect* on interstate commerce or the requirements of the statute are not satisfied. Under the 'in commerce' theory, the ultimate effect on interstate commerce is the impact on that commerce under a qualitative and not a quantitative test. If there is price fixing or division of the market involved, there are violations per se, as a matter of law. \* \* \*" [Emphasis the court's.]

Here, plaintiffs have alleged the extensive interstate character of Plum Tree's business, including interstate purchases for resale and shipment in interstate commerce. They have alleged that Plum Tree franchisees are located in at least 22 states. Finally, they have alleged (Complaint ¶12) that all Plum Tree franchisees were required to and did enter into "the same or materially similar franchise agreements, containing the same illegal provisions, and were subjected to the same policies and illegal practices of defendants." We are convinced that these allegations are sufficient to demonstrate that the acts complained of occurred in interstate commerce.

But this is not the end of it. In Las Vegas Merchant Plumbers, *supra,* the court differentiated between cases (1) where the acts complained of occurred in the flow of interstate commerce; and (2) where the acts occurred wholly on a local level in intrastate commerce, but substantially affected interstate com-

merce. In United States v. Bensinger Company, 430 F.2d 584, at page 588 (C. A. 8, 1970), the court said:

"Where the activities are interstate in nature, the interstate commerce issue depends upon whether the restraint is a *per se* violation of the Act, such as price fixing * * * or division of markets * * *, or whether the restraint must meet the test of 'unreasonableness' * * *.

Where there is a *per se* violation, the effect upon interstate commerce follows as a matter of law and is conclusively presumed. * * * There need be no showing of the amount of commerce involved and it is no defense that the amount was small." [Citations omitted.]

Thus, on the "in commerce" theory, our inquiry must be whether the alleged actions of defendants established a *per se* violation of the Sherman Act. Counts I, II and III of the complaint set forth the alleged offending restraints. For the reasons set forth below, summary judgment for defendants will be entered as to Count II and Count III will be dismissed. Hence, we consider here only the allegations of Count I as establishing *per se* violations of the Act.

■ Count I alleges that Plum Tree is the registered owner of the service mark "The Plum Tree"; that this defendant had sales of over $1,000,000 for the year ending September 30, 1970; and that the franchise fee charged to plaintiffs was $10,000. Plaintiffs allege that as conditions to the franchise agreement, plaintiffs were required to purchase from defendants fixtures, decor, furnishings, inventory and supplies for a total price of $41,000, which is more than they would have been required to pay in a competitive market. There is no doubt that these allegations, if proved, would establish a tying-in arrangement. The question is, however, whether it would be an illegal tying arrangement. We conclude that it would.

In Siegel v. Chicken Delight, Inc., 448 F.2d 43, at page 49 (C.A. 9, 1971), the court said:

"Thus, sale of a franchise license, with the attendant rights to operate a business in the prescribed manner and to benefit from the goodwill of the trade name, in no way requires the forced sale by the franchisor of some or all of the component articles. Just as the quality of a copyrighted creation cannot by a tie-in be appropriated by a creation to which the copyright does not relate, United States v. Paramount Pictures, Inc., 334 U.S. 131, 158, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), so here attempts by tie-in to extend the trademark protection to common articles (which the public does not and has no reason to connect with the trade-mark) simply because they are said to be essential to production of that which is the subject of the trade-mark, cannot escape antitrust scrutiny."

In Northern Pacific R. Co. v. United States, 356 U.S. 1, at page 6, 78 S.Ct. 514, at page 518, 2 L.Ed.2d 545 (1958), speaking of tying arrangements, the Court said:

"They are unreasonable in and of themselves whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of interstate commerce is affected."

In Fortner Enterprises v. United States Steel Corp. et al., 394 U.S. 495, at pages 502–503, 89 S.Ct. 1252, at page 1258, 22 L.Ed. 495 (1969), the Court said:

"The standard of 'sufficient economic power' does not, as the District Court held, require that the defendant have a monopoly or even a dominant position throughout the market for the tying product. Our tie-in cases have made unmistakably clear that the economic power over the tying product

can be sufficient even though the power falls far short of dominance and even though the power exists only with respect to some of the buyers in the market. See, e. g., International Salt [International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20]; Northern Pacific; United States v. Loew's Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962). As we said in the Loew's case, 371 U.S. at 45, 83 S.Ct. at 102 [9 L.Ed.2d at 18]: 'Even absent a showing of market dominance, the crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes.' "

Finally, in United States v. Loew's, Inc., 371 U.S. 38, at pages 45–46, 83 S.Ct. 97, at page 102, 9 L.Ed.2d 11 (1962), the Court said:

> "The requisite economic power is presumed when the tying product is patented or copyrighted, International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; United States v. Paramount Pictures, Inc. 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260.
>
> \*    \*    \*    \*    \*    \*
>
> These cases reflect a hostility to use of the statutorily granted patent monopoly to extend the patentee's economic control to unpatented products. The patentee is protected as to his invention, but may not use his patent rights to exact tribute for other articles."

The same principles apply to the holder of a registered trademark. No one may use it without his permission and he may not use his rights to exact tribute. We have here in Count I allegations of (1) an arrangement tying the grant of the franchise with the purchase of furnishings, decor, fixtures, inventory and supplies; (2) sufficient economic power with respect to the tying product to appreciably restrain competition; and (3) considering defendants' $1,000,000 annual sales, a "not insubstantial" amount of interstate commerce. Thus, Count I sufficiently alleges a *per se* vio-lation of the antitrust laws. The foregoing necessarily disposes of the motion to dismiss Count I. That motion will be denied.

B. Count II alleges that under the franchise agreement, plaintiffs' rights as a franchisee were not assignable without the prior written consent of defendants and that as a condition of plaintiffs' operation as a franchisee of defendants, plaintiffs were required to purchase all of their merchandise and supplies from defendants. Plaintiffs claim that their annual purchase of merchandise and supplies has amounted to approximately $55,000.00 and that they were forced to pay higher prices for merchandise and supplies than they would have had to pay in the competitive market had they not been prevented from purchasing from vendors whom they might otherwise have used.

■■ First, there is certainly nothing unreasonable in requiring the consent of the franchisor to the assignment of the franchise. A franchisor has a perfect right to consider the character, stability, reputation, business ability, etc. of those to whom it will entrust its own good name, its mark and its products. We see nothing invidious in a franchisor taking precautions against the indiscriminate use of its own reputation and the intrusion of perhaps unsavory strangers.

■ Second, there is nothing in the franchise agreement itself to support plaintiffs' allegation that they are required "to purchase all of their merchandise and supplies from defendants." But beyond that, plaintiffs' sworn answers to defendants' interrogatories make it abundantly clear that at the time the franchise agreement was executed they were affirmatively advised that they could purchase for resale from other vendors, subject only to the requirement that the products so purchased be equal to or greater than the quality of standard Plum Tree items. Again, that requirement is a reasonable one to prevent the dilution of the quality

of defendants' own trademark. Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, Inc., 175 F.Supp. 107 (E.D.Pa., 1958), rev'd on other grounds, 268 F.2d 569 (C.A. 3, 1959).

Defendants argue that in light of the total absence of any tie-in provisions in the franchise agreement for the purchase of merchandise and in light of plaintiffs' answers to defendants' interrogatories, plaintiffs' Count II averments present no issue of material fact. On June 20, 1973, we filed a memorandum and order treating defendants' motion to dismiss Count II as a motion for summary judgment under F.R.Civ.P. 56 and granting plaintiffs ten days to file counteraffidavits or other material pertinent to a motion for summary judgment.

Plaintiffs' responding affidavits are inadequate to erect any genuine issue of material fact. We reject summarily the affidavit filed by Alan M. Lerner, Esquire. F.R.Civ.P. 56 provides explicitly that "opposing affidavits shall be made on personal knowledge, shall set forth facts as shall be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Mr. Lerner's averments consist entirely of hearsay which would be inadmissible at the trial.

The affidavit of Jerome Seligson avers only that Plum Tree rejected two suppliers and furnished only a small assortment of products from another. The affidavit says nothing about the quality of the goods sought to be purchased nor does it state that any approval has been unreasonably withheld. Nowhere is it averred that the plaintiffs have been totally prevented from purchasing from other suppliers. Indeed, plaintiffs' own sworn answer to defendants' interrogatory No. 37 shows that they have in fact purchased from other suppliers. In the present posture, plaintiffs themselves have demonstrated that there was no tie-in requirement. As to Count II there is no genuine issue of material fact. Having treated defendants' mo-

tion to dismiss as a motion for summary judgment, the motion will be granted.

C. Count III of the complaint purports to charge defendants with price fixing. It contains six paragraphs, 38 through 42, and paragraph 38 incorporates by reference paragraphs 1 through 37. Section 1 of the Sherman Act, 15 U.S.C. § 1, condemns "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States * * *." The five "substantive" paragraphs of Count III are barren of any reference to any conspiracy. Paragraph 6 does allege that defendant Roger Marquett Direct Import is a part of the AAMCO-Plum Tree family and that at various times, Marquett has acted in concert with, and on behalf of Plum Tree to negotiate discounts for Plum Tree from Plum Tree suppliers. Paragraphs 39, 40 and 42 allege:

"39. Defendants, as part of their uniform operation of their franchise program generally were billed by franchisees' vendors and, in turn, billed the franchisees for goods sold and delivered by such vendors to franchisees.

"40. The prices billed and charged by defendants to franchisees are generally in excess of that which defendants pay to vendors.

\*    \*    \*    \*    \*    \*

"42. The purpose and effect of defendants' pricing policy and practice, as set forth in paragraph 40 hereof is to fix, maintain and stabilize the prices at which plaintiffs would sell their goods to the public."

This is the very best that can be gleaned from the complaint as to any conspiracy to fix prices. It is not enough.

There is no allegation anywhere that there was any conspiracy or agreement among or between competitors to fix or maintain prices. It is not, and could not be, alleged that Marquett and Plum Tree are competitors for the same market. It is not alleged that Plum Tree and its

vendors are competitors. In United States v. Columbia Pictures Corporation, 169 F.Supp. 888, at page 893 (S.D.N.Y., 1959), the court reviewed the cases invalidating agreements between competitors and said:

" * * * Such contractual restraints *agreed to by competitors*, actual or potential, have been labelled 'per se' violations of Section 1. However, before we may say that such agreements are inherently unlawful, we must find that the agreements were made between competitors, actual or potential, dealing in competing products in a relevant market." [Emphasis added.]

Similarly, in Sunbeam Corp. v. Payless Drug Stores, 113 F.Supp. 31, at page 39 (N.D.Cal.1953), the court said:

"Plaintiff's contracts do not involve 'horizontal' price fixing. That type of price fixing involves contracting parties who are on the same level of distribution. The contracts here involved were between a manufacturer on one side and either distributors or retailers on the other. Nor is the legality of the contracts influenced by the fact that their use may eliminate price competition at the retail level of distribution. Such a result is lawful if a distributor successfully negotiates individual 'vertical' agreements with all his retailers."

■ We think the logic of those cases is unassailable. In reality, all that Count III alleges is that Marquett obtained discounts from suppliers for Plum Tree; that Plum Tree acted as a middleman or wholesaler; and that Plum Tree took a wholesaler's mark-up when the goods were sold to plaintiffs. We know of nothing in the law that makes such a practice illegal.

For the above reasons, we will grant the motion to dismiss Count III.

D. Discussion of Count IV requires analysis of the allegations of that Count and also of the complaint as it now stands. Count IV is really a catalogue of alleged overt acts as part of the alleged "unlawful conspiracy and attempt to restrain trade and commerce." In light of our grant of summary judgment on Count II and our dismissal of Count III, the only remaining allegations of Sherman Act illegality are those in Count I,—the alleged tie-in with the grant of the franchise of the purchase of furnishings, decor, supplies and original inventory. If that transaction is eventually determined to be illegal, it nonetheless was completed on the date the franchise agreement was signed,— November 25, 1969,—or very shortly thereafter. All of the allegations in paragraph 45(c) relate to events occurring in 1971. Therefore, they have no relevance to an alleged act that was completed in 1969.

The allegations of paragraph 45(a) and (b) are:

"45. As part of their unlawful conspiracy and attempt to restrain trade and commerce defendants have done each of the acts set forth above and have also:

"(a) Entered into leases with owners of each of the premises on which a Plum Tree Franchise operates thus requiring each Franchisee to sublease from defendants;

"(b) Recruited Franchisees who had no experience in or demonstrated aptitude for the retail gift sales business by making inflated, unrealistic promises, required that such Franchisees make substantial payments of cash and undertake substantial debt obligations to go into business and given new Franchisees insufficient and improper training thus creating completely dependent Franchisees; * * *."

Again, these allegations have no conceivable relation to the only remaining Sherman Act count now remaining viable, *i. e.*, Count I.

We will therefore dismiss Count IV.

E. Count V is a claim for fraudulent misrepresentation asserted under pendent jurisdiction. Plaintiffs allege that defendants fraudulently induced them into becoming Plum Tree franchisees.

As a result of these misrepresentations, plaintiffs claim they lost in excess of $60,000, including the franchise fee and other expenses relating to the operation of the franchise.

█ Although defendants cite no Pennsylvania cases, they argue that plaintiffs have not made out a claim for fraud. We disagree. Under Pennsylvania law, "a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction" constitutes actionable fraud. Neuman v. Corn Exchange National Bank & Trust Co., 356 Pa. 442, 450, 51 A.2d 759, 763, 52 A.2d 177 (1947).

█ Here, plaintiffs have alleged that defendants made twelve misrepresentations of fact and intention for the purpose of inducing them to sign the franchise agreement. This suffices to state a claim for fraud under Pennsylvania law.

█ Although Count V does state a claim for fraud, we agree with defendants that it fails to comply with F.R.Civ. P. 9(b), which provides:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

█ Normally, the complaint must state the time, place, and content of the false misrepresentation, the fact misrepresented and what was obtained or given up as a consequence of the fraud. 2A, Moore, Federal Practice, ¶9.03. Here, the complaint does state the content of the alleged misrepresentations, the facts allegedly misrepresented, and what was given up as a consequence of the fraud. The complaint, however, does not specify the time, place or circumstances of these misrepresentations. Rather, the complaint merely says that they occurred at or before the execution of the franchise agreement.

Although a motion to dismiss may not be the proper remedy for plaintiffs' failure to comply with F.R.Civ.P. 9(b),

we may consider that motion as a motion for a more definite statement. Lynn v. Valentine, 19 F.R.D. 250 (S.D. N.Y., 1956).

So considered, we will deny defendants' motion to dismiss Count V, but will order plaintiffs to file a more definite statement within ten days, specifying the time, place and circumstances of each of the alleged fraudulent misrepresentations.

F. Count VI is a claim for breach of contract, also asserted under pendent jurisdiction. Plaintiffs allege that defendants "breached and otherwise failed to perform, each and every one of the aforementioned warranties, representations and promises." Unfortunately, the count does not include any mention of specific warranties, representations and promises. Presumably, this reference is to the misrepresentations enumerated in Count V, for many of the warranties enumerated in Count V appear in the franchise agreement.

█ At any rate, we shall interpret this count as pertaining to an alleged breach of warranties contained in the franchise agreement, and not as a suit for the falsity of any collateral representations made by defendants to the Seligsons. *Cf.* Gianni v. Russell & Co., Inc., 281 Pa. 320, 126 A. 791 (1924). Because the principle of "notice pleading" required by F.R.Civ.P. 8 applies with equal force to actions arising from a contract, we find that Count VI does state a cause of action. *See* 2A Moore, Federal Practice, ¶8.17[6].

## III. COMPULSORY COUNTERCLAIM

Defendants' final ground for dismissal is that plaintiffs should have asserted their claims in this action as a compulsory counterclaim to Civil Action No. 71–1780 in which Plum Tree was a plaintiff. F.R.Civ.P. 13(a) provides,

*"Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the

transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

On July 16, 1971, defendant Plum Tree filed its complaint in this court against the Seligsons, charging them, *inter alia*, with breach of the franchise agreement here in question. The Plum Tree, Inc. v. Jerome Seligson and Dorothy Seligson, Civil Action No. 71–1780 (E.D.Pa.). On August 12, 1971, the Seligsons moved to dismiss Plum Tree's complaint in Civil Action No. 71–1780 for lack of jurisdiction over the subject matter. Then, on August 13, 1971, plaintiffs filed their first complaint in this action, alleging various violations of the antitrust laws by Plum Tree, arising out of the same franchise agreement which was the basis of Plum Tree's suit for breach of contract. Seligson v. The Plum Tree, Inc., Civil Action No. 71–1998 (E.D.Pa.). On May 15, 1972, we granted the Seligsons' motion to dismiss Plum Tree's complaint in Civil Action No. 71–1780, with leave to amend, on the ground that it was simply an action for breach of contract, and since there was no diversity of citizenship or other ground for federal jurisdiction, we lacked jurisdiction over the subject matter. Plum Tree, Inc. v. Seligson, 342 F. Supp. 1084 (E.D.Pa.1972).

However, on November 3, 1972, we granted Plum Tree's motion to dismiss, with leave to amend, the Seligson's amended complaint in Civil Action No. 71–1998, for lack of subject matter jurisdiction. Seligson v. Plum Tree, Inc., 350 F.Supp. 440 (E.D.Pa.1972). On November 8, 1972, we denied the Seligsons' motion to dismiss Plum Tree's amended complaint in Civil Action No. 71–1780. The amended complaint in Civil Action No. 71–1780 asserted a trademark infringement claim based on events which occurred after Plum Tree had filed its first complaint in Civil Action No. 71–1780. Plum Tree, Inc. v. Seligson, 350 F.Supp. 441 (E.D.Pa.

1972). The Seligsons filed their second amended complaint in Civil Action No. 71–1998 on November 17, 1972.

In Lawhorn v. Atlantic Refining Co., 299 F.2d 353 (C.A.5, 1962), Lawhorn had sued Atlantic for breach of contract. Atlantic's motion to dismiss was granted. Later, Atlantic sued Lawhorn, who moved to dismiss on the ground, *inter alia*, that Atlantic's claim should have been asserted by a counterclaim in Lawhorn's original suit. In rejecting Lawhorn's argument, the court said, at page 356:

" * * * [I]t is clear that a plaintiff must have a claim before a defendant is required to assert a compulsory counterclaim. A counterclaim must be pressed only when it is related to the ' * * * subject matter of the opposing party's *claim* * * *.' F.R.Civ.P. 13(a) (emphasis added). That is what makes it a *counter*claim. And it is only to such a *counter*claim that the rule attaches a compulsory character. When Atlantic's motion to dismiss was successful, it was a judicial determination that Lawhorn had no *claim* upon which relief could be granted. If there was no claim, no counterclaim was required."

It is true that in Lawhorn the complaint had already been dismissed before Atlantic's action was filed, whereas here the motion was under advisement when the Seligsons' complaint was filed. But it is nonetheless also true that our later grant of Seligsons' motion to dismiss was a determination that when the complaint here was filed, defendants in fact had no claim to which a counterclaim was required. Therefore, we will deny defendants' motion to dismiss this action for failure to comply with F.R.Civ.P. 13(a).

## IV.  PARTIES

The Seligsons' original complaint named as defendants The Plum Tree, Inc. and AAMCO Automatic Transmissions, Inc. In the first amended complaint, plaintiffs added as a defendant AAMCO Industries, Inc. In the second

amended complaint, plaintiffs also added as defendants Roger Marquett Direct Import and Robert Morgan.

Defendants moved to drop as parties AAMCO Industries, Inc., Roger Marquett Direct Import and Robert Morgan, because plaintiffs did not comply with F.R.Civ.P. 21 which requires leave of court before adding parties. Plaintiffs responded to defendants' motion by moving to add these parties.

Defendants also move to drop as parties AAMCO Automatic Transmissions, Inc., AAMCO Industries, Inc., Roger Marquett Direct Import, and Roger Morgan for a variety of other reasons. The thrust of defendants' arguments is that Plum Tree is a separate corporate entity. Although there may be some common ownership of Plum Tree and the other corporations named, defendants claim that Plum Tree operates separately and apart from them, and they, in turn, are not liable on contracts entered into by Plum Tree. Further, defendants argue that Robert Morgan, the President of Plum Tree, is not personally liable on any contracts entered into by Plum Tree. Thus, defendants for the purpose of this motion claim plaintiffs have asserted no valid cause of action against any defendant other than Plum Tree.

As we have pointed out, Count I alone remains viable in a Sherman Act context. The complaint alleges that Transmissions owned all of the stock of Plum Tree. Robert Morgan was the President of Plum Tree and signed the franchise agreement on its behalf. Finally, Count I refers throughout to defendants, in the plural. Giving the complaint its broadest permissible reading, and considering the relationships existing among Plum Tree, Transmissions and Morgan, we think there is sufficient to retain Transmissions and Morgan as defendants.

As to Roger Marquett, avowedly its only role was to negotiate discounts from Plum Tree suppliers and to warehouse Plum Tree's merchandise. We have held that this was insufficient to sustain Count III. There is no connection alleged between Marquett and the allegations of Count I. And there is nothing whatsoever alleged as to AAMCO Industries, Inc. except that its stock is controlled by Transmissions. We will, therefore, grant plaintiffs' motion to add Robert Morgan as a defendant; we will deny their motion to add Roger Marquett and AAMCO Industries; we will deny defendants' motion to drop Transmissions as a party and will grant defendants' motion to drop AAMCO Industries, Inc. and Roger Marquett as parties.

## V. JURY TRIAL

Defendants move to strike plaintiffs' demand for a jury trial. Defendants claim that plaintiffs waived their right to a jury trial by assenting to paragraph 20 of the franchise agreement between Plum Tree and the Seligsons, which provides,

"It is mutually agreed by and between the parties that the LICENSEE waives trial by jury in any action, proceeding, counterclaim, whether at law or equity brought against him or in any matter whatsoever arising out of or in any way connected with this Agreement or the performance by the LICENSEE of this Agreement."

Plaintiffs concede that the right to a jury trial may be waived by contract. However, plaintiffs argue that the waiver here is invalid because the contract itself is violative of the antitrust laws. This argument is clearly specious. The very issue is the validity of the contract and this is clearly covered by the waiver. We will grant defendants' motion to strike plaintiffs' demand for a jury trial.