### The PLUM TREE, INC.

v.

### Jerome SELIGSON and Dorothy Seligson, husband and wife.

### Civ. A. No. 71–1780.

United States District Court,
E. D. Pennsylvania.

Oct. 21, 1974.

**308**

See also, D.C., 350 F.Supp. 441, D.C., 342 F.Supp. 1084.

George J. Hayward, Bridgeport, Pa., John D. Maida, Lancaster, Pa., for plaintiff.

Perry S. Bechtle, Alan M. Lerner, David Gutin, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for defendants.

## MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

Plaintiff has filed a consolidated motion to dismiss certain counts of defendants' counterclaim and to strike defendants' demand for a jury trial.

Several of the counts asserted in the counterclaim here (C.A. No. 71–1780) were previously asserted in C.A. No. 71–1998 and were decided in Seligson v. Plum Tree, Inc., 361 F.Supp. 748 (E.D. Pa.1973). We see no reason to modify the views we expressed there. We will therefore grant plaintiff's motion to dismiss the following:

1. Allegations in Count I of violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, insofar as they relate to the sublease tie. This was decided adversely to defendants in Seligson v. Plum Tree, Inc., *supra,* at 755.

2. Count II, which concerns an unlawful tie of replacement inventory.

Summary judgment was granted in Plum Tree's favor in Seligson at 753–754.

3. Count III, which concerns price-fixing. This was dismissed in Seligson at 754–755.

In addition, we will strike defendants' demand for a jury trial for the reasons given in Seligson at 758.

However, Count IV of defendants' counterclaim raises issues not previously considered in this litigation. It alleges a violation of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, and Rule 10b–5 of the regulations promulgated by the Securities and Exchange Commission pursuant to the Securities Exchange Act of 1934. The relevance of the allegations in the counterclaim to a possible violation of securities law is not immediately clear. However, the memorandum in opposition to the motion to dismiss shows that defendants are asserting that their franchise agreement constitutes an "investment contract" within the definition of a "security" under 15 U.S.C. § 78c(a)(10). The issue, then, is whether the franchise agreement between the Seligsons and Plum Tree, Inc. may, under any possible reading of the pleadings, be considered an investment contract.

█ In SEC v. W. J. Howey Co., 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), the Court defined "investment contract" as

"* * * a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party * * *."

Nonetheless, despite the restrictiveness of the word "solely", the Third Circuit has recently adopted an approach in keeping with the Supreme Court admonition in Howey that the definition should embody "a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." 328 U.S. at 299, 66 S.Ct. at 1103. Under the Third Circuit definition, an investment contract exists where the duties to be performed by the investor are nominal or limited and have little effect on success or failure of the venture. Lino v. City Investing Co., 487 F.2d 689, 692 (C.A.3, 1973).

█ In considering whether a particular arrangement is an investment contract, there is a distinction between pyramid sales schemes and traditional franchise arrangements. A pyramid sales scheme is found where the investment in the enterprise is made with the expectation of obtaining profits by the sale of the scheme to others rather than by an on-going involvement with running a business. Thus, in SEC v. Glenn Turner Enterprises, Inc., 474 F.2d 476 (C.A.9, 1973), purchasers of the Glenn Turner Adventures were solicited with promises of profit through sales of the plans to new purchasers. The original buyer was not expected to take any active part in the sale other than encouraging prospective buyers to attend an initial meeting. The court concluded that the original purchaser's efforts were nominal and thus classified the scheme as an investment contract. See also Securities Act Release No. 5211 (Nov. 30, 1971) reported in 1971–72 Transfer Binder C.C.H. Fed.Sec.L.Rep. ¶ 78446.

In contrast, traditional franchise arrangements are not investment contracts and thus not within the securities laws. The Sixth Circuit has said that:

"[i]n the traditional franchise arrangement the franchisee manages the local business and it therefore cannot be said that his return comes *solely* from the efforts of others." Nash & Associates v. Lum's Of Ohio, Inc., 484 F.2d 392, 395 (C.A.6, 1973). *See also* Bitter v. Hoby's International, Inc., 498 F.2d 183 (C.A.9, 1974).

The only case arising in this Circuit involved an arrangement embodying many of the characteristics of both a pyramid sales scheme and a traditional franchise agreement. Lino, *supra, 487*

F.2d 689. While the expected profits depended on recruiting others to do the day-to-day work, the court stressed that the efforts necessary to obtain these returns by finding recruits were significant. Thus, the arrangement was not an investment contract.

 Turning to the agreement between the Seligsons and Plum Tree, we conclude that the efforts expected of the Seligsons were not nominal or insignificant. Paragraph 4(c) of the agreement provided:

"During the period of this agreement LICENSEE shall devote his full time, energy and effort to the management and operation of the store and LICENSEE shall not engage in any other business either at the location of the store or at any other location."

Paragraph 4(d) similarly required the Seligsons to "vigorously and aggressively promote the sale of PLUM TREE products."

Defendants argue that the agreement significantly restricted their power and control over the Plum Tree operation. It is true that the power retained by Plum Tree to specify the decor of the store, the operating hours, the location of the store, the quality of the merchandise, and the arrangement of the store and window displays constituted a substantial limitation on defendants' operation of the franchise. Nonetheless, the every-day functioning of the store, such as hiring and firing of personnel, maintenance of good customer relations, and day-to-day "salemanship," remained the duty of the Seligsons. Their efforts would contribute substantially to the success or failure of the venture. We cannot say that the residue of decision-making and responsibility left to the Seligsons under the franchise agreement was nominal. In such circumstances, we cannot find that the Seligsons were "led to expect profits solely from the efforts of the promoter * * *." Howey, *supra*, 328 U.S. at 299, 66 S.Ct. at 1103.

Therefore, we hold that the franchise agreement between Plum Tree and the Seligsons was not an investment contract and thus not a security within the meaning of the securities laws. Count IV of the defendants' counterclaim will be dismissed.

One additional matter remains. Plaintiff requests that this case be consolidated for trial with the case of Seligson v. The Plum Tree, Inc., C.A. No. 71–1998. Judicial economy dictates that the request be granted.