**FEDERATION OF WESTINGHOUSE INDEPENDENT SALARIED UNIONS and Association of Westinghouse Salaried Employees, Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant.**

**Civ. A. No. 79–767.**

United States District Court, W. D. Pennsylvania.

Jan. 10, 1980.

Albert C. Shapira, Pittsburgh, Pa., for plaintiffs.

Charles R. Volk, Richard R. Riese, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, District Judge.

The plaintiffs, a national labor union and its local affiliate, brought this action to compel the defendant employer to arbitrate an unresolved grievance. This Court has jurisdiction pursuant to § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).

The facts are familiar. After an employee of the defendant was suspended indefinitely from employment on September 25, 1978, for poor attendance, he filed a grievance. At a meeting a month later between union representatives and management personnel, the employer offered the employee an opportunity to return to work in a different job classification at a lower rate of pay. He refused.

The union and the employer interpret these facts, and their legal significance, quite differently. The plaintiffs contend that this employment controversy is within the scope of the arbitration clause in the contract between the employer and union and that this Court must therefore order the parties to arbitration. Section XV-A of the "Agreement between Westinghouse Electric Corporation and Federation of Westinghouse Independent Salaried Unions," effective July 18, 1976, provides in part that

[t]hose grievances which remain unsettled after the grievance procedure has been exhausted . . . and which involve . . .

30. A disciplinary penalty, release or discharge which is alleged to have been imposed without just cause

shall be arbitrable upon the request of either the Federation or the Company.

The employer does not complain that the grievance procedure has not been exhausted; rather, it argues that the facts giving rise to the grievance do not fit within § XV-A(30) of the contract. The company characterizes the employee's refusal to return to work at the lower-paying position as a "voluntary quit" not within the contractual language of "a disciplinary penalty, release, or discharge," and therefore not subject to arbitration. It asks this Court to "immerse" itself in the facts of this case, by means of a hearing if necessary, and to study the history of the collective bargaining to determine whether the parties intended that this dispute be covered by the arbitration clause. Further, it contends that § XV-A is narrowly and specifically drawn, exhibiting the parties' concern that these, and only these, enumerated controversies be submitted to arbitration. Finally, it acknowledges that the original suspension of plaintiff is subject to arbitration.

On the plaintiffs' Motion for Summary Judgment, we face a single issue: whether the instant grievance is <u>arguably</u> within the meaning of XV-A of the union contract so that this Court must, as a matter of law, order these parties to arbitration.

We underscore the word "arguably" because case precedent has established a weighty presumption in favor of arbitration of labor disputes. Of course, the defendant is correct in beginning with the proposition that arbitration is a matter of contract and parties to a labor agreement may define their arbitration agreements with precision to include or exclude items from arbitration. *E. g., United Steelworkers v. Warrior*

& Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Carey v. General Electric Co.*, 213 F.Supp. 276 (S.D.N.Y.1962), aff'd 315 F.2d 499 (2d Cir. 1963). As the Second Circuit noted in *Carey*, 315 F.2d at 507, "arbitration is not an incident of the employment relationship but is a creature of contract between the union and the employer."

However, as with any type of contract, labor agreements give rise to disputes where language is unclear or ambiguous or where it is simply general and does not anticipate every specific set of factual circumstances which will arise. This labor agreement realistically provided for the resolution of such inevitable problems in § XV–A ¶ F, which provides that where either party denies the arbitrability of a grievance, the American Arbitration Association "shall have authority to process [the controversy] only after a final judgment of a Court has determined that the grievance . . . raises an arbitrable issue or issues."

Where the parties disagree on the meaning and extent of contractual language, courts must look to the plain meaning of the language, applying common sense and judicial precedent. On the common sense front, plaintiffs contended at oral argument that the company's offer of a lower-paying job simply "masked a discharge." We agree that calling a cow a horse does not make it so; however, this Court has little expertise in a labor context in distinguishing between the incidents of a "disciplinary penalty, release, or discharge" on the one hand and a "voluntary quit" on the other. The defendant is probably correct insofar as it contends that we would have to become immersed in the factual background to resolve that distinction.

There are good reasons for this Court not to immerse itself in this factual dispute. First among them is the heavy presumption in favor of the peaceable settlement of labor disputes through binding arbitration. A long line of cases has established that this is a federal policy to be applied in questionable cases. As the United States Supreme Court has instructed, "An order to arbitrate the particular grievance should not be denied unless it may be said *with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) (emphasis added); *accord, Teamster's Local 30 v. Helm's Express*, 591 F.2d 211 (3d Cir. 1979); *United Engineering Employees v. United Engineering & Foundry Co.*, 389 F.2d 479, 481–82 (3d Cir. 1967).

Aside from the presumption favoring arbitrability in doubtful cases, we have specific warnings from the Supreme Court not to get involved in the merits of labor controversies. In *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), a unanimous Supreme Court agreed that courts "have no business weighing the merits of [a] grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Accord, L. O. Koven & Bro. v. Local Union No. 5767*, 381 F.2d 196 (3d Cir. 1967). *See also* the *Warrior & Gulf Navigation case*, 363 U.S. at 585, 80 S.Ct. at 1354:

. . . the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

These warnings encourage the routing of labor disputes to the appropriate forum of arbitration which has the expertise in these matters that federal courts lack. Thus, even where arbitrability is questionable—so long as the court is not "positively sure" that the dispute is outside the boundaries of the arbitration clause—the peaceable, informed resolution of disputes through binding arbitration is favored.

The defendant, while acknowledging these principles, attempts to distinguish this case by the specific language and general intent of the contract. It correctly asserts that the Supreme Court cases establishing these principles involved no-strike clauses in conjunction with broad arbitration clauses. *See American Mfg. Co.,* 363 U.S. at 565, n.1, 80 S.Ct. at 1345, n.1. ("Any disputes, misunderstandings, differences or grievances arising between the parties as to . . . this agreement . . . may be submitted to the Board of Arbitrators"); *Warrior & Gulf,* 363 U.S. at 576, 80 S.Ct. at 1349–1350. ("Should differences arise between the Company and the Union . . as to the meaning and application of the provisions of this agreement, . . . there shall be no suspension of work [and if grievance proceedings fail] the matter shall be referred to an impartial umpire for decision"). However, the principles are not limited to the facts of those cases and have been reiterated in numerous other factual settings. *See* cases collected at 29 U.S.C.A. § 185, notes 321–390 (1978).

■ Moreover, the distinction the defendant presses was anticipated in *American Mfg. Co.,* 363 U.S. at 573, 80 S.Ct. at 1365 (Brennan, J., concurring):

The Court makes reference to an arbitration clause being the *quid pro quo* for a no-strike clause. I do not understand the Court to mean that the application of the principles announced today depends upon the presence of a no-strike clause in the agreement.

At oral argument the parties disputed the existence of a no-strike agreement between them. We need not reach that question; we only hold that the federal policies favoring peaceable settlement of labor disputes through arbitration and the routing of labor controversies to an experienced forum chosen by the parties are not limited to cases involving broad arbitration clauses or such clauses in conjunction with no-strike agreements.

The defendant rightly asserts that this particular arbitration clause is specific, containing thirty enumerated areas subject to arbitrability. The explanatory language of § XV–A(B) is exclusive: "It is the intention of the parties that *only* those disputes which are set forth in paragraph A of this section shall be arbitrable" (emphasis added). It is clear that the parties intended to limit arbitration by their agreement, which they are legally entitled to do. *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974) (arbitration arises by contract, not by operation of law).

However, all these factors do not negate the controlling principles; they simply narrow our focus in considering whether the particular dispute fits within the arbitration scheme. We still must ask what the parties agreed to and still must follow the judicial presumption in questionable cases. The effort of the employer to limit arbitration by specific enumeration of issues—the "evolution" of the contract the defendant has urged—achieves its goal if there are fewer questionable cases to trigger the presumption. This is simply not one of those cases.

■ The arbitration clause specifically includes grievances involving a "disciplinary penalty, release or discharge." The employer admits that its original one-month suspension of the employee is arbitrable but denies that the subsequent "voluntary quit" of the employee after refusing to return to work via demotion is within the arbitration clause. We cannot say with certainty, as the union does, that the company's offer simply masked a discharge. It may seem a reasonable inference to the uninitiated; it should properly be a question of fact for the arbitrator. On the facts before us and the language of the contract we cannot come close to saying "with positive assurance" that this dispute is outside the specific language the parties agreed upon—"disciplinary penalty, release, or discharge."

A similar result, under very similar contractual language, was reached in *Jennings v. Westinghouse Electric Corp.,* 383 F.Supp. 308 (S.D.N.Y.1968). There a grievance under a plant rule that transformed seven days' absence into a "quit without notice"

was deemed to be within the scope of an arbitration clause that provided coverage of any "disciplinary penalty (including discharge)." 283 F.Supp. at 315. *See also* the interpretation of other provisions of this contract by Chief Judge Weber of this Court, CA 79–896 (Oct. 17, 1979).

The plaintiffs' motion for summary judgment must therefore be granted and the parties ordered to arbitration.