TIMES PUBLISHING COMPANY,
Plaintiff,

v.

ERIE NEWSPAPER GUILD, LOCAL 187 OF the NEWSPAPER GUILD,
Defendant.

Civ. A. No. 81–205 Erie.

United States District Court,
W. D. Pennsylvania.

Dec. 16, 1981.

---

**1132**

Richard Zamboldi, Erie, Pa., for plaintiff.

Sean McLaughlin, Erie, Pa., for defendant.

## OPINION

WEBER, Chief Judge.

This is an action under § 301 of the Labor-Management Relations Act, 1947, 29 U.S.C. § 185. In this case the plaintiff, Times Publishing Company, is seeking to enjoin the defendant, Erie Newspaper Guild, from submitting to arbitration a grievance existing between the parties. Presently this matter is pending before the court on cross-motions for summary judgment. These motions have been fully briefed and, it appearing that there is no dispute as to any material fact, are now ripe for our resolution.

The facts underlying this dispute are quite simple. In November of 1979 the plaintiff and defendant entered into a collective bargaining agreement. Under the terms of this agreement the jurisdiction of the Newspaper Guild extended to "(a) the kind of work either normally or presently performed within the [bargaining] unit covered by this contract, (b) any kind of work similar in skill, or performing similar function, as the kind of work either normally or presently performed in said unit . . .". Article 1, paragraph 5. The scope of the Guild's jurisdiction was further defined by Article 5, paragraph 1 and 2 of the collective bargaining agreement which provided that:

1. None of the provisions of this agreement shall apply to: business manager, executive editor, confidential secretary to the publisher, suburban correspondents and those employed at space rates, circulation manager, head of the accounting department, managing editor, national, local and classified advertising managers, circulation director, building superintendent, credit manager, director of bureaus and assistant display managing editor and service department manager.

2. All of the provisions of this agreement except as to hours and wages shall apply to the following: sports editor, motor route supervisor, manager of advertising collection, city editor, city and county circulation manager, assistant circulation manager."

Article 12 of the collective bargaining agreement established procedures for the arbitration of disputes arising under this contract. Under this provision of the contract the range of matters subject to grievance procedure was quite broad, encompassing "any matter arising from the application of this agreement."

In August of 1980, the plaintiff began publication of Showcase Magazine, a new leisure time weekly tabloid insert in its daily newspapers. The Times appointed Kevin Cuneo as the managing editor of this magazine. Because this new position was not covered under the terms of the existing collective bargaining agreement, the Union filed a grievance seeking inclusions of this position in the bargaining unit. The Times rejected this grievance, arguing that this new position was supervisory and not within the scope of the collective bargaining unit. The Union then requested that this matter be submitted to arbitration in accordance with the provisions of the collective bargaining agreement. The Times responded to this request by filing the instant action to enjoin arbitration.

Briefly summarized the positions of the parties are as follows: The Times argues that the question raised in this case involves the proper scope of the collective bargaining unit. According to the Times this is a statutory question over which the National Labor Relations Board has exclusive jurisdiction. Because the NLRB has exclusive jurisdiction the Times urges that arbitration of this dispute be enjoined. As for the Newspaper Guild it relies on the broad language of the contract's arbitration clause and the expansive scope of the Union's jurisdiction under the contract to argue that this is a matter covered by the agreement and as such is properly arbitrable.

We believe that this dispute is properly the subject of arbitration under the collective bargaining agreement. Accordingly, we grant the defendant's motion for summary judgment and order this matter to proceed to arbitration.

At the outset we recognize that contractual arbitration provides an orderly, rational method of resolving labor disputes. It also provides labor and management with an alternative to direct economic warfare as a method of resolving industrial disputes. Therefore, in a very important way the arbitration of labor-management disputes promotes industrial peace. See *Carey v. Westinghouse*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). The law recognizes the important beneficial function of arbitration and, accordingly, there is a strong federal policy favoring the arbitration of labor disputes. *Gateway Coal Co. v. United Mineworkers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Teamsters Union Local No. 30 v. Helms Express Inc.*, 591 F.2d 211, 218 (3d Cir. 1979).

■ An important corollary to this policy is the principle that claims of arbitrability should be construed broadly and "an order to arbitrate [a] grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steel Workers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

■ Applying this standard we have little difficulty in determining that this matter may properly be the subject of arbitration. The collective bargaining agreement in this case provides for arbitration of "any matter arising from the application of this agreement." The agreement defines the jurisdiction of the Newspaper Guild as encompassing work that is similar in skill or function to work presently done by members of the bargaining unit. Under the agreement the sports editor and city editor are part of the bargaining unit. The work of these editors is in some respects similar to that performed by Mr. Cuneo as editor of Showcase Magazine. Therefore, we cannot say "with positive assurance" that the arbitration clause of this contract does not cover this dispute. Accordingly, we must order the matter to arbitration.[1]

---

1. By so ordering we do not, in any way, wish to imply any view on the ultimate merit of this claim. In fact, at this time, we are proscribed by the law from undertaking any such consideration of the merits of the Union's claim. See, *Federation of Westinghouse Independent Sala-*

Nor does the plaintiff's assertion that the NLRB retains exclusive jurisdiction over this issue in any way alter our conclusion. Even if we assume that the NLRB does retain some jurisdiction in this area, it is clear that that jurisdiction in no way acts as a bar to the arbitration of this grievance. *International Association etc. v. International Air Service*, 636 F.2d 848 (1st Cir. 1980); *International Union v. E–Systems, Inc.*, 632 F.2d 487, 490 (5th Cir. 1980), ("it is well established ... that the existence of a possible remedy with the board does not bar suit for enforcement of the collective contract under § 301 of the Act."); *Carey v. General Electric Co.*, 315 F.2d 499 (2d Cir. 1963); *Newspaper Guild of Greater Philadelphia v. Central States Publishing Co.*, 451 F.Supp. 1112 (E.D.Pa.1978).

The statutory framework created by the Labor-Management Relations Act is frequently superimposed over, and co-exists with, a separate framework created by the parties in a collective bargaining agreement. Given the existence of these two systems designed to regulate the relationship between management and labor, it is hardly surprising to discover that many disputes involve matters covered by both contractual grievance procedures and by federal legislation. Because of this regulatory overlap the National Labor Relations Board has developed what is referred to as the post arbitration deferral doctrine. Under this doctrine the Board will decline to exercise its jurisdiction in cases where "fair and regular" arbitration proceedings have independently arrived at a result which is not clearly repugnant to the purposes and policies of the National Labor Relations Act. *Spielberg Manufacturing Co.*, 112 NLRB 1080, 1082 (1955); See also, *Associated Press v. NLRB*, 492 F.2d 662 (D.C.Cir.1974). In our view this doctrine recognizes that there are strong policy reasons for promoting the arbitration of labor disputes. Moreover implicit in this doctrine is a recognition by the NLRB that arbitrable matters can properly proceed directly to arbitration,

even if they raise questions that are within the exclusive jurisdiction of the Board.

Therefore, in this case we feel that the proper course for the parties to take is to proceed to arbitration. Such arbitration is consistent with federal labor policy and it does not improperly infringe upon the jurisdiction of the NLRB.

An appropriate order will issue.

---

*ried Unions v. Westinghouse Electric Corp.*, 482 F.Supp. 308, 310 (W.D.Pa.1980). The merits of these claims are questions which are

solely for the arbitrator to determine at this time.