**Robert ANDERSON et al.**

v.

**HOME STYLE STORES, INC., et al.**

**Civ. A. No. 71–201.**

United States District Court,
E. D. Pennsylvania.

April 30, 1973.

Michael H. Malin, White & Williams, Philadelphia, Pa., for plaintiffs.

George P. O'Connell, Barbin & Lauffer, P. A., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This case is now before the Court on plaintiffs Robert Anderson and Joseph and Carol S. Lang's renewed motion for summary judgment on the issue of liability. Defendants have moved to strike this motion, claiming that nothing new is before the Court which was not before the Court when plaintiffs' original motion for summary judgment was denied by Memorandum and Order dated December 21, 1972, D.C., 58 F.R.D. 125. The Court disagrees, for reasons which will become obvious shortly, and the de-

fendants' motion to strike will therefore be denied.

As noted in this Court's original memorandum, defendant Walter Copeland has testified that he has made credit agreements and has guaranteed the loans for the purchase of the stores for all three of the captioned plaintiffs as a precondition for entering into the requirements contracts, none of the plaintiffs having the individual capital to go into business without the guarantees given by Copeland. Actually it would be more accurate to say that defendant Copeland required that the plaintiffs enter into the franchise agreement, and accept the requirements contracts, as a precondition of obtaining defendant Copeland's credit guarantees.

■■ This Court is now of the opinion that it misconstrued the nature of the tying agreement in its first memorandum. The total requirements contract in this case was tied to the provision of the guarantees of the loans which it was necessary for the plaintiffs to obtain in order to go into business. The Home Style trademark was not of great significance in this arrangement' as a tying product. While it may not be as great an advantage to be a Home Style delicatessen in the Eastern Pennsylvania delicatessen market as it was to be a Chicken Delight shop in the Northern California fast fried chicken market, Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9 Cir. 1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972), it is essential to get the capital to open a store to be in the delicatessen business at all. Extracting a total requirements contract as the price of supplying initial business capital or credit to obtain it is a violation of the Sherman Act. See Fortner Enterprises v. United States Steel, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

Competitors of defendants in the delicatessen provisions market were denied the business of defendants' locked-in customers not because of inferior products or higher prices, but because they were not also in the credit underwriting business.

■ Total requirements contracts are not illegal in and of themselves. They may be entered for many legitimate reasons relating to the product or products to be supplied. But, as they always dampen competition, their setting must always be carefully scrutinized when they are challenged on antitrust grounds.

■ Defendants in this case attempted to purchase a long term non-competitive sale market by providing credit. The provision of credit may be a legitimate part of an acceptable total requirements contract as long as the credit has reasonably direct relation to the products to be supplied. When the credit is not credit on the purchase of products, but the store in which the products are sold, then that credit has become a separate product itself, and the contract thus extracted is prima facie illegal. No elaborate analysis of market power is necessary at that point. The conditions of the money market are such that the existence of takers of the credit-contract scheme is sufficient to show, ipso facto, a sufficiently advantageous market position to impose the total requirements contract as a condition of obtaining the capital to be in business at all.

The sale of a product only on the condition of a tie-in where the seller has so little advantage in relation to the tying product "that it does not represent an effectual weapon to pressure buyers into taking the tied item", Northern Pacific R. R. Co. v. U. S., 356 U.S. 1, 6, 78 S.Ct. 514, 519, 2 L.Ed.2d 545 (1958), may not be illegal, but such a sale (and such a foolish purchaser) is presumably very rare. The Court is satisfied virtually beyond all doubt that that is not the situation in this case.

■ It may be that the plaintiffs escape a bad bargain freely entered into. But the antitrust laws are not so much concerned with the freedom with which the bargain was entered, as they are the

effect of the bargain on those parties who are, in fact if not in law, the real aggrieved parties, that is, the competitors of the restrainer of trade, and in the final analysis, the consumer, who must depend on the maintenance of such competition to keep profit margins low and prices down.

■ The Court is further convinced of the correctness of the plaintiffs' position that justification of a per se illegal tie-in contract is an affirmative defense which must be raised by the defendants. Since no such circumstances have been even alluded to by the defendants in this case, since the plaintiffs have filed affidavits sufficient to establish the existence, if not the extent, of some legal damage from the illegal tie-in arrangement, and since the Court has, in its previous memorandum, found all the other essential elements of liability for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, to be present in this case, the Court will grant the motion for summary judgment on behalf of plaintiffs Robert Anderson and Joseph and Carol S. Lang on the issue of liability only, reserving judgment on the issue of the extent of damages pending further proceedings.